AMERICAN INSTITUTE OF MANAGEMENT, INCORPORATED, Landlord, *v.* LORENZO PISCOPO, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, September 30, 1953.

*Harold Obstler* for landlord.

*Joseph M. Stein* for tenant.

M. SHAPIRO, J. This is a summary proceeding for nonpayment of rent for the month of August, 1953, of space occupied by the tenant for business purposes comprising the ground floor of the building known as 316 Lexington Avenue, in the borough of Manhattan, city of New York. The premises were originally demised to the tenant in 1940 by the landlord's predecessor in title under a written agreement for a term of one month at a rental of $45.

After the expiration of the original term, the tenant continued in possession on a month-to-month basis until August, 1952, at which time, it is conceded, the tenant's status as a month-to-month tenant was terminated by notice pursuant to section 232-a of the Real Property Law, and since then the tenant has occupied the premises as a statutory tenant. The tenant continued to pay and the landlord accepted the original reserved rent of $45 a month up to and including the month of July, 1953, notwithstanding that the emergency rent for the space became $51.75 a month, after the effective date of the Business Rent Law (L. 1945, ch. 314). In my opinion, the reasons that prompted the landlord to refrain from compelling the tenant to pay the emergency rent prior to August, 1953, are not material to the issue presented to the court for determination in this proceeding.

In June, 1953, the landlord served on the tenant, as required by the emergency act, a statement of emergency rent, and therein notified the tenant that the rent thereafter would be $59.51 per month. Upon the tenant's failure to pay this amount the landlord commenced the instant proceeding.

The landlord contends that since the tenant has never been charged the original 15% increase which constituted the emergency rent, i.e., the rent in force and effect on June 1, 1944, plus 15%, the landlord is entitled to an additional 15% increase above such emergency rent by virtue of the amendment to subdivision (c) of section 2 of Business Rent Law by chapter 452 of the Laws of 1953, which defines '' emergency rent '' and reads as follows: '' (c) ' Emergency Rent.' The rent reserved or payable under any lease, agreement or tenancy of business space in force on June first, nineteen hundred forty-four, plus fifteen per centum of such rent, *except with respect to a tenant who, since January first, nineteen hundred forty-seven, has paid such emergency rent without an increase pursuant to any of the provisions of this act, and in any such case such emergency rent, plus fifteen per centum* ''. (The italicized portion constitutes the amendment.)

The tenant claims that the landlord is entitled only to the emergency rent as defined by the original act, namely, $51.75, notwithstanding the amendment above quoted.

The question squarely presented to the court for determination by the conflicting contentions of the parties is what is the present '' emergency rent '' under the act as amended in 1953, as aforesaid, of business space occupied by a statutory tenant who never has paid the initial emergency rent increase.

Prior to 1953 amendment the term " emergency rent " was clearly fixed and defined in the statute as " The rent reserved or payable under any lease, agreement or tenancy of business space in force on June first, nineteen hundred forty-four, plus fifteen per centum of such rent ". The amendment fixed a new formula for determining the " emergency rent " with respect to a tenant who, since January 1, 1947, has paid the emergency rent as originally defined, without an increase pursuant to any of the provisions of the act.

However, the language of the amended statute is ambiguous as to whether the new formula is applicable to a tenant who has never paid the initial emergency rent increase. Accordingly, the court is bound to search for the legislative intent in such facts and through such rules as may in connection with the language, legitimately reveal it; and to effect the intent of the Legislature the language of the statute may be freely dealt with and words may be interpolated or shifted in position or enlarged or restrained in their meaning and operation (*Travelers Ins. Co.* v. *Padula Co.,* 224 N. Y. 397).

. It would be paradoxical indeed to allow a landlord who has collected the initial emergency rent to receive an additional 15% where such emergency rent has been paid by a tenant without increase since January 1, 1947, and to deny the additional amount to one who, regardless of the reasons therefor, has never received from the tenant the initial emergency rent increase either prior to or after January 1, 1947. I do not believe that the Legislature intended such a paradox.

The statute was enacted originally because unjust, unreasonable and oppressive leases and agreements for the payment of rent were being exacted by landlords under stress of then prevailing conditions accelerated by war. The Legislature, by its definition of " emergency rent " in the original act, determined that the rent with respect to business space in force and effect June 1, 1944, plus 15% of such rent, was fair and reasonable. By the 1953 amendment the Legislature, in effect, has made a new determination that the fair and reasonable rent of such space, with respect to a tenant who has paid the emergency rent since January 1, 1947, without an increase, now is the initial emergency rent, plus 15%. In order to give effect to such determination, it is necessary freely to deal with the words of the statute and enlarge their meaning so as to include in the category of tenants who are subject to the additional 15% increase, those who never have paid the initial emergency

rent increase, as well as those who have continued to pay less than the initial emergency rent.

The legislative report of the State Temporary Commission to Study Rents and Rental Conditions which was submitted to the Legislature on March 5, 1953, further tends to clarify the legislative intent. That report (N. Y. Legis. Doc., 1953, No. 43) states as follows (pp. 19–20): " 2. Some tenants have occupied rental space in business and commercial properties from the time that such space was subjected to rent and eviction regulation. The rents paid by such tenants were fixed at the rent level of 1943 or of 1944, plus 15% which was declared to be the ' emergency rent ' to be paid during the period of the emergency. The occupants of such premises have enjoyed a period of unprecedented business boom. Landlords of these properties during the same period of time have been subjected to substantial increases of operating costs more especially since a progressive system of price decontrols was put into effect. It is recommended, therefore, that so-called ' statutory ' tenants, i.e., tenants whose leases have expired and who continue in occupancy under the emergency statutes merely by paying the emergency rent, who have not volunteered to pay or whose landlords have refrained from compelling them to pay an increase in rent pursuant to appropriate provisions of the Emergency Acts, pay an increase in rent of 15% exceeding the amount of the emergency rent. By the enactment of this recommendation, it is hoped that long-neglected repairs in such properties will be made and rapid depreciation of such structures retarded or stopped. (Business Law, Section 2, Subd. [e]; Commercial Law, Section 2, Subd. [c].) "

The construction given by this court to the act, as amended, is further strengthened by an examination of the history of the act as contained in the committee reports and the reports of the commission.

In view of the foregoing, I find that the proper rental for the premises herein is $59.51 per month, and accordingly award a final order to the landlord, the warrant to be stayed for five days.